UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
|     DEBRA L. GATES | ) | Case No. 04-12076-SSM |
| | ) | Chapter 7 |
|                Debtor | ) | |
| | ) | |
| DEBRA L. GATES | ) | |
| | ) | |
|               Plaintiff | ) | |
| | ) | |
| vs. | ) | Adversary Proceeding No. 04-1240 |
| | ) | |
| ANTHONY REGINALD DIDONATO | ) | |
| t/a RAPID RECOVERY CREDIT & | ) | |
| COLLECTIONS | ) | |
| | ) | |
|               Defendant | ) | |

**MEMORANDUM OPINION**

       This is an action to hold a debt collector in contempt and to recover damages for violating the automatic stay and the discharge injunction by drafting the debtor's bank account and by leaving messages for the debtor on her answering machine in an attempt to collect a pre-petition debt owed to a chiropractor.  The debtor also seeks an injunction prohibiting any further collection efforts.  For the reasons stated, the court finds that the defendant violated both the automatic stay and the discharge injunction. This opinion constitutes the court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052 and Rule 52(a), Federal Rules of Civil Procedure.

Findings of Fact

Debra L. Gates filed a voluntary petition in this court on May 7, 2004, for relief under chapter 7 of the Bankruptcy Code. Among the creditors listed on her schedules was "Rapid Recovery (Dr. Mays)" in the amount of $685.00.[1] "Rapid Recovery Credit & Collections" is a sole proprietorship owned by Anthony Didonato. It has been engaged in the business of debt collection for approximately 15 years. Its mailing address until approximately a year ago was Post Office Box 112, Fairfax, Virginia 22030. Around that time the main post office in Fairfax was moved across town and the ZIP code was changed to 22038. As late as the day before the trial, however, the telephone answering machine for Mr. Didonato's office still gave 22030 as the ZIP code. In any event, the Bankruptcy Noticing Center mailed a notice of the commencement of the debtor's case[2] to Rapid Recovery at P.O. Box 112, Fairfax, Virginia 22030 on May 13, 2004. After the trustee filed a report of no distribution, the debtor was granted a discharge on August 23, 2004. A copy of the discharge was mailed to Rapid Recovery at the same address as the 341 notice on August 26, 2004. The docket does not reflect that any returned notices were received by the clerk. Mr. Didonato testified that he did not receive either the 341 notice or the discharge and that it was his practice, if such a notice was received, to place it in the debtor's file and notify the creditor.

---

[1] Dr. Clifton E. Mays is a chiropractor in Chantilly, Virginia, who treated the debtor in 1999. Apparently the original amount of the unpaid bill at the time it was referred to Mr. Didonato was $1,100.00, with Mr. Didonato to receive 50% of the amount collected.

[2] This notice is commonly referred to by practitioners as "the 341 notice" because it contains the date, time and place of the meeting of creditors under § 341 of the Bankruptcy Code.

On June 23, 2004 – approximately six weeks after the bankruptcy filing – Rapid Recovery withdrew $50.00 from the debtor's checking account by presenting what purported to be a pre-authorized or "telephone" check dated June 16, 2004. This was a check payable to Rapid Recovery drawn on the debtor's bank that contained the debtor's name and account number.[3] The signature line did not contain an actual signature but only the debtor's printed name together with the legend, "This check is pre-authorized by your depositor." There is a conflict in the testimony as to whether the debtor actually authorized Rapid Recovery to submit such an instrument. Mr. Didonato testified that on November 13, 2003 – six months prior to the bankruptcy filing – the debtor, in a telephone call with him, had authorized the submission of two $50.00 checks, one the following day and the second on June 16, 2004. This testimony was directly contradicted by the debtor, who denied that she had ever authorized Rapid Recovery to draft her account and testified that her consistent practice was never to authorize any withdrawals from her "primary" checking account (the one into which her pay check was deposited). Mr. Didonato testified that a written notification would have been sent to Ms. Gates at least five days before the check was presented. However, he was unable to produce any document showing that such notice was in fact given, and Ms. Gates denied receiving any such

---

[3] These checks (referred to as "Fone-Chex") were prepared for Rapid Recovery by a company in Texas called The CFI Group. According to Mr. Didonato, when speaking to a debtor by telephone he would ask a debtor to orally authorize the submission of one or more (possibly post-dated) checks. He would obtain from the debtor the name on the account, the account number, the name of the bank, the bank's routing number, and an actual check number from the debtor's check book. The form on which this information was placed had space for three such checks. The form would be faxed to The CFI Group, which would actually prepare the checks (with proper account coding and routing numbers) and send the check to Rapid Recovery, which would then deposit them in its bank account on the agreed dates.

notice.[4] In any event, having weighed the testimony of the parties, the court finds Ms. Gates to be the more believable witness. The court accordingly finds that Ms. Gates did not authorize the submission of the June 16, 2004, "pre-authorized" check.

After Ms. Gates learned of the withdrawal, she complained to the bank, which restored the funds to her account on July 9, 2004, and returned the check to Rapid Recovery with the notation, "REASON FOR RETURN / NOT AUTHORIZED."[5] In the interim, the debtor closed the account on July 2, 2004, in order to prevent any further withdrawal attempts.[6] On July 30,

---

[4] Over Mr. Didonato's objection, Ms. Gates was permitted to present testimony from another bankruptcy debtor, Sandra Robinson, who had also been the subject of collection efforts by Mr. Didonato. Ms. Robinson filed a chapter 7 case in March 2003 and received a discharge in July of that year. She had not listed Rapid Recovery or the creditor (a dentist) to whom the debt was owed on her original schedules because, as she put it, "it wasn't in my mind." When she was subsequently contacted by Mr. Didonato, however, she notified her attorney, who filed amended schedules in August 2003 adding "Rapid Recovery" as a creditor. The attorney mailed notice of the amendment, together with a copy of the discharge and the notice of commencement of case to Rapid Recovery at P.O. Box 112, Fairfax, Virginia 22030. The caption on the notice (as well as on the amended schedules) gave the debtor's name as "Sandra Robinson Amendment." Ms. Robinson testified that Mr. Didonato then telephoned her at work in December 2003 and told her she needed to make a payment on the debt, that he was going to issue a warrant for her, and told her, "You don't want to be arrested." She testified that she was so rattled by the call ("I wasn't thinking") that she did not focus on the fact that the debt had been discharged (and, indeed, made no mention to Mr. Didonato of the bankruptcy), and she authorized a single $50.00 payment from her bank account. She further testified that unbeknownst to her, Rapid Recovery presented not one but five such $50.00 "pre-authorized" checks over the next several months, a fact she did not become aware of until May 2004 when her rent check bounced.

[5] Mr. Didonato's trial exhibits include a copy of the check with the additional hand-written notation, "Closed Account." This was written on the check by Mr. Didonato after it was returned by the bank and he called the bank to determine whether the check could be resubmitted.

[6] In her second amended complaint, the debtor alleged that in August 2004 Mr. Didonato made another attempt – unsuccessful, since the account was by then closed – to draft her account for $50.00. In support of this claim, she attempted to place into evidence certain bank records evidencing the attempted submission of a $50.00 "pre-authorized check" by Rapid Recovery dated July 16, 2004. The court declined to admit the records because they were not properly

(continued...)

2004, she filed the present action against "Rapid Recovery, Inc." seeking damages under both the Bankruptcy Code and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (FDCPA), for the attempted withdrawal from the account and an injunction against further collection attempts. The person whom debtor's counsel believed to be Rapid Recovery's registered agent advised that he was not the registered agent, and an alias summons was issued on August 25, 2004, and was served on Mr. Didonato by mail – addressed to the same P.O. Box 112, Fairfax, Virginia 22030 address as the prior notices from the court – on September 3, 2004.

In the interim, Mr. Didonato left a telephone voice mail message for the debtor at her sister's house (where she had previously resided) in late August 2004. The message was as follows:

> Yeah message for Debra L. Gates. Debra this is Tony from the attorney's office in Fairfax Virginia. Listen, this is in regarding the case with Dr. Mays your chiropractor. You were making payments on this bill. You closed your account, Chevy Chase Bank account. Now at this point, a civil warrant is going to be issued in your name tomorrow at the close of business. There have been a bunch of messages left for you. You haven't returned any. The collection people have given up on you. I am going to direct tomorrow the attorney to file a civil warrant action on you, have them add the attorney fees, court fees, interest and damages. Now we are also talking some bad checks here, we have two of them in our possession right now. You need to contact me Debra. If you have an attorney give me his name and number. I need to speak to him as well. If you don't have one, you're going to need one

---

[6](...continued)
authenticated. In his testimony, Mr. Didonato testified that he did not "think" such a check had been presented. However, in his telephone message to Ms. Gates on August 24th, he referenced *two* "bad" checks ("Now we are also talking some bad checks here, we have *two* of them in our possession right now.") (emphasis added). Since there was no evidence of any check prior to the June 16th check that had not been paid, the reference to a second unpaid check can logically only refer to the July 16th check. Thus, the court finds it more likely than not that Mr. Didonato did submit a second check.

> probably on these cases once you go to court in front of a judge.
> Again, this is Tony at 703-273-4224. Again this is Tony.

A week later, Mr. Didonato telephoned again and left the following message:

> Yeah this message again for Debra L. Gates under Social Security number [redacted] first five digits of your social. Again Debra I am leaving a message for you. This is Tony from legal at Rapid Recovery. There has been another fee added onto your case, your refusal to pay keeps adding fees onto this bill. Now attorney fees and court fees will be added on. And you will find yourself placed with two bad checks in front of a judge, not a good situation to be in. You need to contact me at my direct line 703-273-4224 extremely urgent 703-273-4224.

Twenty-one days after service of the alias summons, Mr. Didonato filed a motion to dismiss the complaint for failure to state a claim for relief and for lack of subject-matter jurisdiction. The debtor in turn moved to amend the complaint to allege the two telephone calls as additional violations of the FDCPA and a violation of the discharge injunction. The motion to amend the complaint was granted without opposition. By memorandum opinion and order of October 20, 2004, this court dismissed the FDCPA claims without prejudice for lack of subject-matter jurisdiction unless, within ten days, the debtor filed a motion with the United States District Court for withdrawal of the reference in order to permit all the claims to be tried in the District Court. The debtor did not seek withdrawal of the reference, and trial was held solely on the claims for violation of the automatic stay and the discharge injunction and the request for an injunction against future collection attempts.[7]

---

[7] The debtor's trial exhibits included a fee agreement between the debtor and her attorney with respect to the present litigation and a "transaction list" showing $4,086.75 in fees charged to the debtor through February 17, 2005. While the transaction list provided the date of each service and a short description, it did not state the time expended nor the name of the timekeeper. The trial itself lasted approximately 2 hours and 45 minutes.

6

Conclusions of Law and Discussion

I.

This court has subject-matter jurisdiction under 28 U.S.C. §§ 1334 and 157(a) and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  Under 28 U.S.C. § 157(b), this is a core proceeding in which a final judgment or order may be entered by a bankruptcy judge.  Venue is proper in this district under 28 U.S.C. § 1409(a).  The defendant has been properly served and has appeared generally.

II.

As has been many times observed, the automatic stay is one of the most fundamental debtor protections.  The filing of a bankruptcy petition operates as an automatic stay of, among other actions, "any act to collect ... a claim against the debtor that arose before the commencement of the [bankruptcy] case."  § 362(a)(6), Bankruptcy Code.  A violation of the automatic stay may be redressed by the bankruptcy court under its civil contempt powers. § 105(a), Bankruptcy Code;  *Burd v. Walters (In re Walters)*, 868 F.2d 665 (4th Cir. 1989). Additionally, an individual injured by a willful violation of the automatic stay may recover compensatory and punitive damages and reasonable attorney's fees.  § 362(h), Bankruptcy Code; *Budget Serv. Co. v. Better Homes of Va.*, 804 F.2d 289 (4th Cir. 1986).

The automatic stay expires, as to actions against the debtor, when the debtor is granted a discharge.  § 362(c)(2)(C), Bankruptcy Code.  With respect to dischargeable debts, however, it is replaced by the discharge injunction, which in broad terms prohibits "the commencement or continuation of an action, the employment of process, or an act, to collect recover or offset any such [discharged] debt as a personal liability of the debtor, whether or not discharge of such debt

is waived." § 524(a)(2), Bankruptcy Code. Although there is no private right of action for violation of the discharge injunction (as there is under § 362(h) for a violation of the automatic stay), a violation may be addressed as a contempt of court, and sanctions may be awarded that compensate the debtor for the violation. *Cherry v. Arendall (In re Cherry)*, 247 B.R. 176, 186-87 (Bankr. E.D. Va. 2000).

A.

There can be no question that the attempted draft of the debtor's bank account in June 2004 to collect the prepetition debt owed to Dr. Mays violated the automatic stay. There can also be no question that the telephone calls in August demanding payment of the debt violated the discharge injunction. The only issue is whether those violations were willful. A violation of the automatic stay or discharge injunction is "willful" if the person has knowledge of the bankruptcy filing and undertakes an act which violates the stay or the injunction.

B.

Notwithstanding Mr. Didonato's testimony that he had no knowledge of the bankruptcy, that he did not receive the notice of commencement of case mailed by the Bankruptcy Noticing Center, and that on several occasions he had not received receive mail sent to him at the 22030 ZIP code, the court did not find his testimony to be convincing. Mr. Didonato's business was collecting money. The ZIP code he gave out on his office telephone recording as late as the trial of this action was 22030. If mail addressed to that ZIP code was not getting through to his post office box – thereby keeping him from getting the money he was trying to collect – it is difficult to believe that he would not have changed the recording long before. Additionally, the court docket does not contain a returned mail entry for either the 341 notice or the discharge. Finally,

the summons and complaint in this adversary proceeding – mailed to the exactly the same address as the two court notices – obviously reached Mr. Didonato without difficulty, since he promptly filed a motion to dismiss the complaint.  His bald and uncorroborated assertion that he never received the 341 notice and that he would have closed the file and returned it to Dr. Mays had he received such a notice is entitled to little weight.  This is particularly true since the evidence plainly shows that Mr. Didonato is far from scrupulous with respect to observing legal niceties.  For example, under the Fair Debt Collection Practices Act, it is illegal for a debt collector to falsely represent or imply that he or she is an attorney or that the communications are from an attorney.  15 U.S.C. § 1692e(3).  And yet, Mr. Didonato did precisely that.  ("Debra this is Tony from the attorney's office in Fairfax Virginia.").  A debt collector also may not represent or imply that nonpayment of the debt will result in the debtor's arrest or imprisonment nor may a debt collector solicit a post-dated check to use as a basis to threaten criminal prosecution.  15 U.S.C. §§ 1692e(4) & 1692f(3).  Here, Mr. Didonato's reference in the phone message to filing a "civil warrant action," coupled with the statement, "Now we are also talking some bad checks here," is precisely the sort of communication that would lead an unsophisticated consumer to believe he or she would be arrested if payment were not made.  In short, the court gives no credence to Mr. Didonato's representation that he did not receive the bankruptcy notice and was not aware of the bankruptcy filing.

  Having considered the evidence, the court finds that Mr. Didonato had actual knowledge of the debtor's bankruptcy filing in June 2004 when he presented the "pre-authorized" check; in July 2004 when he again attempted to present a "pre-authorized" check; and finally in August 2004, when he telephoned and left the dunning messages for the debtor on her sister's telephone

voice mail system.[8]  Accordingly, the court concludes that Mr. Didonato willfully violated the automatic stay by presenting the two checks and that he willfully violated the discharge injunction by leaving the dunning telephone message.

III.

There remains the issue of an appropriate remedy.  As noted, the Bankruptcy Code provides an individual right of action for violation of the automatic stay.  § 362(h), Bankruptcy Code.  A debtor who is injured as a result of a willful violation of the stay may recover compensatory and punitive damages as well as attorney's fees.  *Id.*  There is, however, no private right of action for violation of the discharge injunction.  *Cherry*, 247 B.R. at 186.  Rather, the party violating the discharge injunction may be found to be in either civil or criminal contempt.

---

[8]  In making this finding, the court has relied only on the evidence concerning the debtor and not the evidence concerning Ms. Robinson.  While the time frame is the same, there are sufficient factual differences that the court is reluctant to draw a conclusion as to the defendant's habit or practice.  Notably, Rapid Recovery was not initially listed as a creditor in Ms. Robinson's case and received no notices from the court.  Although the schedules were later amended to add Rapid Recovery as a creditor, the notice that was mailed by Ms. Robinson's attorney showed the debtor's name as "Sandra Robinson Amendment" as though "Amendment" were her last name.  Although "Amendment" would surely be an odd family name and might reasonably call for further inquiry, the court is nevertheless disinclined to rely on a somewhat confusing notice as the basis for finding a pattern or practice with respect to violations of the automatic stay.  Ms. Robinson's testimony as to what Mr. Didonato told her during the telephone call would be arguably be probative with respect to the alleged violations of the FDCPA.  However, the court has dismissed the FDCPA claims in this case for lack of subject-matter jurisdiction.

*Id.* at 186-87. In a civil contempt action, sanctions may be either coercive or compensatory[9] but may not be punitive.[10]

A.

With respect to the withdrawal from the debtor's bank account, the debtor's actual damages are only nominal: namely, the loss of the use of the money for the 16 days from the date the account was debited to the date the bank restored the money to the account. It is true that the debtor was also put to the inconvenience of having to close the account as a precaution – a wise one, as it turned out – against a further withdrawal attempt, but there was no evidence of any out-of-pocket cost incurred by the debtor in closing the account and transferring the funds. With respect to the dunning phone calls, the debtor undoubtedly suffered some degree of mental anguish, but not to the extent directly affecting her health or ability to work, or requiring professional treatment. The debtor was, however, reasonably required to retain counsel to bring the present action in order to redress the violations of the automatic stay and the discharge injunction and to prevent additional collection efforts. Having considered the evidence, the court fixes the debtor's compensatory damages under § 362(h) at $1.00. The court finds that punitive damages are appropriate for violation of the automatic stay and awards such damages in the amount of $500.00. An award of attorney's fees is also appropriate. Since the evidence

---

[9] *Better Homes of Va., Inc. v. Budget Serv. Co.*, 52 B.R. 426, 431 (E.D.Va. 1985) ("Civil contempt orders are, by their nature, remedial or coercive."), *aff'd*, 804 F.2d 289 (4th Cir. 1986); *Keene Corp. v. Acstar Ins. Co. (In re Keene Corp.)*, 168 B.R. 285, 288 (Bankr. S.D.N.Y. 1994) ("Civil contempt proceedings can be coercive or compensatory. Coercive civil contempt imposes sanctions, such as fines or imprisonment, to compel compliance with the court's orders; compensatory civil contempt attempts to indemnify the injured party for the damage caused by the contempt.").

[10] *Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812 (4th Cir. 2004).

presented at trial was insufficient to make a determination under the controlling standard in this Circuit,[11] the court will require counsel to submit an application for such fees within ten days of the entry of judgment.  Appropriate compensatory sanctions for violation of the discharge injunction would normally include the fees reasonably incurred by debtor's counsel in bringing the violation before the court.  However, since attorney's fees are being awarded in connection with the § 362(h) cause of action, an award of attorney's fees for the violation of the discharge injunction is subsumed in the award for violation of the automatic stay.  If, however, Mr. Didonato fails to pay such fees within 30 days of the entry of judgment, the court will adjudge additional sanctions in the amount of $50.00 per day for each day that the attorney's fees remain unpaid.

B.

The final issue is that of injunctive relief.  On the one hand, since the discharge itself is an injunction, a second injunction to enforce the first is arguably duplicative and therefore unnecessary.  On the other hand, the statutory injunction is general and applies to the world. Where a particular creditor has committed multiple willful violations, an injunction specifically directed to that creditor and its conduct is appropriate to protect the debtor's rights.  For that reason, the court will grant a permanent injunction prohibiting Mr. Didonato, his employees, agents, or anyone acting in concert with him from communicating with the debtor in any fashion

---

[11] *See  Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978), (adopting *Johnson* 12-factor test); *Anderson v. Morris*, 658 F.2d 246 (4th Cir. 1981) (In applying the 12-factor test of *Barber*, court should first multiply the number of hours reasonably expended by the customary hourly rate to determine an initial amount for fee award and then adjust the fee on the basis of the other factors.); *Harmon v. Levin*, 772 F.2d 1150 (4th Cir. 1985) (applying *Barber* to attorney's fee award in bankruptcy case).

with respect to the debt owed to Dr. Mays or the alleged "bad checks"; from presenting any check or other negotiable instrument purporting to be authorized by the debtor in payment of such debt; and from bringing, counseling, or threatening to bring any suit or other collection action against the debtor with respect to the debt owed to Dr. Mays or the alleged "bad checks." The court will also require that Mr. Didonato provide Dr. Mays with a copy of this opinion and to notify Dr. Mays in writing of this court's ruling that the debt owed by the debtor has been discharged in bankruptcy and that any action to collect such debt is prohibited by law.

A separate judgment will be entered consistent with this opinion.

Date: _____          _____
                                      Stephen S. Mitchell
Alexandria, Virginia                  United States Bankruptcy Judge


Copies to:

Nancy O. Ryan, Esquire
Law Offices of Robert Ross Weed
1420 Prince Street, Suite 200
Alexandria, VA 22314
Counsel for the plaintiff

Richard G. Hall, Esquire
4208 Evergreen Lane, Suite 234
Annandale, VA 22003
Counsel for the defendant